UNITED STATES of America, Appellee,

v.

Ilisa THOMAS–HAMILTON,
Defendant–Appellant,

Santos, et al., Defendants.

No. 1128, Docket 89–1648.

United States Court of Appeals,
Second Circuit.

Argued April 16, 1990.

Decided June 27, 1990.

Robert C. Dorf, New York City, for defendant-appellant.

David C. James, Asst. U.S. Atty., E.D. N.Y., Brooklyn, N.Y. (Andrew J. Maloney, U.S. Atty., E.D.N.Y., Sean F. O'Shea, Asst. U.S. Atty., E.D.N.Y., Brooklyn, N.Y., of counsel), for appellee.

Before TIMBERS, MESKILL and CARDAMONE, Circuit Judges.

MESKILL, Circuit Judge:

Defendant-appellant Ilisa Thomas–Hamilton appeals the sentence imposed by the United States District Court for the Eastern District of New York, McLaughlin, *J.*, pursuant to the Sentencing Reform Act of 1984 (as amended), 18 U.S.C. § 3551 *et seq.* and 28 U.S.C. § 991 *et seq.*, following her plea of guilty to one count of knowingly preparing a fraudulent certificate of title for a stolen automobile, in violation of 18 U.S.C. § 513. The district court sentenced Thomas–Hamilton to sixteen months imprisonment followed by three years of supervised release. On appeal, Thomas–Hamilton challenges her sentence on two grounds: (1) unwarranted sentencing disparity of "similarly situated" co-defendants, and (2) improper enhancement for obstruction of justice.

We vacate the sentence of the district court and remand for resentencing.

## BACKGROUND

Following a large scale investigation of corruption in the New York State Department of Motor Vehicles (DMV), numerous DMV employees, including defendant-appellant Thomas–Hamilton, were indicted for, *inter alia,* issuing fraudulent drivers' licenses and illegally registering stolen cars in connection with an automobile theft ring. Thomas–Hamilton was charged with two counts of racketeering, in violation of 18 U.S.C. § 1962(c), (d), four counts of possessing stolen automobiles that had crossed a state boundary, in violation of 18 U.S.C. § 2313, and six counts of uttering and possessing counterfeit certificates of title, in violation of 18 U.S.C. § 513. Pursuant to a plea agreement, Thomas–Hamilton pleaded guilty to one count of uttering and possessing a counterfeit certificate of title in satisfaction of all charges.

In calculating Thomas–Hamilton's sentence under the Federal Sentencing Guidelines (Guidelines), the Probation Department determined that a base offense level of six was appropriate. *See* Guidelines § 2F1.1 ("Fraud and Deceit"). The base level was increased by seven levels to reflect a loss in excess of $120,000, *see id.* § 2F1.1(b)(1)(H), by another two levels for "more than minimal planning," *see id.* § 2F1.1(b)(2)(A), and, finally, by two additional levels for "obstruction of justice," *see id.* § 3C1.1, yielding an adjusted offense level of seventeen. With respect to the obstruction adjustment, the presentence report provided:

> The probation officer was contacted by the pretrial services unit which was assigned to supervise the defendant during the presentence investigation, and was told that Thomas–Hamilton has failed to maintain good attendance at the Counseling Service of the Eastern District of New York; such attendance was required as part of Thomas–Hamilton's bail agreement. She has often expressed denial of the need for compliance with this condition to counselor and to the probation officer. Of even greater concern was the fact that, during a session with Thomas–Hamilton, the counselor was

threatened with bodily injury by the defendant. In addition, Thomas–Hamilton has missed a number of appointments with the probation officer during the course of the presentence investigation and later denied being absent from home when the officer arrived there. The defendant even denied her identity when the officer introduced himself to the defendant in a laundromat while making a field investigation.

Combining Thomas–Hamilton's adjusted offense level of seventeen with her category I criminal history yielded a Guidelines-specified sentencing range of twenty-four to thirty months imprisonment.

However, in an apparent effort to appeal to Judge McLaughlin's "rough hewn sense of justice" and thereby approximate the lower sentences received by co-defendants Minerva Diaz (three months) and Donna Lane (eight months), the government, during the course of a presentencing hearing on October 26, 1989, agreed to reduce the loss attributed to Thomas–Hamilton from over $120,000 to $68,000, thus decreasing her offense level by two levels. *See id.* § 2F1.1(b)(1)(F). The government also agreed to an additional two level reduction for Thomas–Hamilton's "acceptance of responsibility." *See id.* § 3E1.1.

At sentencing on December 1, 1989, Judge McLaughlin accepted these concessions, but adhered to the Probation Department's earlier recommendation of a two level obstruction of justice enhancement. *See id.* § 3C1.1. The court based the obstruction enhancement solely on Thomas–Hamilton's alleged threats of bodily injury against her drug treatment counselor. The resultant adjusted offense level of thirteen, when combined with Thomas–Hamilton's category I criminal history, yielded a sentencing range of twelve to eighteen months. Judge McLaughlin imposed a sentence of sixteen months imprisonment, three years of supervised release and a $50 special assessment. This appeal followed.

## DISCUSSION

A. *Disparity in Sentences*

Thomas–Hamilton contends that, although her sixteen month sentence was

within the applicable Guidelines-specified range of twelve to eighteen months, the district court erred by imposing a greater sentence on her than on persons she characterizes as "similarly situated" co-defendants. While we are unaware of the precise circumstances surrounding the sentencing of co-defendants Donna Lane (eight months) and Minerva Diaz (three months), we do not believe that the Guidelines-mandated sentence received by Thomas–Hamilton was the result of an "unwarranted sentence disparit[y]." *Cf.* 18 U.S.C. § 3553(a)(6).

The presentence report originally prepared by the Probation Department assigned Thomas–Hamilton an offense level of fifteen and a criminal history category of I, yielding a sentencing range of twenty-four to thirty months. Notwithstanding the admitted propriety of this sentencing range, Judge McLaughlin, in an apparent effort to approximate the lower sentences received by co-defendants Diaz and Lane, reduced Thomas–Hamilton's offense level by two levels to thirteen. Thomas–Hamilton also received a two level reduction for acceptance of responsibility, *see* Guidelines § 3E1.1; however, that reduction was offset by a two level obstruction of justice enhancement, *see id.* § 3C1.1 (discussed *infra*). Thus, were it not for the two level obstruction adjustment, Thomas–Hamilton's sentencing range would have been eight to fourteen months—roughly equivalent to that of co-defendant Lane. Furthermore, Thomas–Hamilton's contention that she is a "similarly situated" co-defendant is belied by the record. First, the government explicitly informed the court at sentencing that Thomas–Hamilton was "among the most culpable" of all of the numerous defendants. Second, unlike Thomas–Hamilton, co-defendants Diaz and Lane apparently did not receive a two level enhancement for obstruction of justice. Accordingly, we are convinced that there was no unlawful sentencing disparity. *Cf. United States v. Rios*, 893 F.2d 479, 481 (2d Cir.1990) (per curiam) ("The guideline level granted a co-defendant in entirely different circumstances is irrelevant in determining appellant's guideline level.").

## B. *Obstruction of Justice*

At the threshold, we must address what we perceive to be Thomas–Hamilton's failure to present her instant obstruction of justice challenge to the court below, for it is well settled that, in the absence of "manifest injustice," we generally will not consider claims that were not presented in the district court. *Schmidt v. Polish People's Republic*, 742 F.2d 67, 70 (2d Cir.1984); *accord Thomas E. Hoar, Inc. v. Sara Lee Corp.*, 900 F.2d 522, 527 (2d Cir.1990); *Rebaldo v. Cuomo*, 749 F.2d 133, 137 (2d Cir.1984), *cert. denied*, 472 U.S. 1008, 105 S.Ct. 2702, 86 L.Ed.2d 718 (1985). The presentence report at issue here identified several potential bases for a two level obstruction of justice enhancement—appellant's failure to maintain good attendance at presentencing drug treatment counseling as required by the bail agreement, her failure to identify herself to a probation officer during the course of a presentence field investigation, and her threatening a drug treatment counselor with bodily injury. By letter dated October 19, 1989, defense counsel objected to any upward adjustment for obstruction of justice, but stated simply that Thomas–Hamilton "truly threatened no one ..., and furnished no material falsehoods to the Probation Officer." At no time prior to appeal did Thomas–Hamilton claim, as she does here, that threatening her drug treatment counselor with bodily harm cannot be properly equated with the "willful[ ] interfere[nce] with the disposition of criminal charges" under section 3C1.1. The instant challenge to appellant's sentence never was presented to the district court. Nevertheless, because we hold that the established facts concerning the threats to the probation officer constituted neither willful obstruction nor attempted obstruction of justice, imposition of the two level enhancement, which potentially increased Thomas–Hamilton's sentence by four months, was manifestly unjust. Consequently, appellant's "new" claim can be asserted on appeal. We turn now to that claim.

Section 3C1.1 of the Guidelines provides: "If the defendant willfully im-

peded or obstructed, or attempted to impede or obstruct the administration of justice during the investigation or prosecution of the instant offense, increase the offense level by 2 levels." Guidelines § 3C1.1. The commentary to section 3C1.1 then explains that "[t]his section provides a sentence enhancement for a defendant who engages in conduct calculated to mislead or deceive authorities or those involved in a judicial proceeding, or otherwise to willfully interfere with the disposition of criminal charges, in respect to the instant offense." *Id.* Commentary. Although Judge McLaughlin acknowledged at sentencing that he was "at a loss to know how [he was] supposed to figure out ... what [Thomas–Hamilton's] intent was," he nevertheless assessed a two level obstruction enhancement based exclusively on the defendant's alleged threat of bodily injury. On appeal, Thomas–Hamilton contends that, even assuming she did threaten her drug treatment counselor with bodily harm, that conduct simply cannot be equated with the "willful[ ] interfere[nce] with the disposition of criminal charges" under section 3C1.1. Since this issue involves the legal interpretation of a Guidelines term, our review is *de novo. See United States v. Stroud,* 893 F.2d 504, 506–07 (2d Cir.1990); *accord United States v. Shoulberg,* 895 F.2d 882, 884 (2d Cir.1990).

Relying on both the plain language of section 3C1.1 and the Commentary, we recently held that "the word 'willfully,' as used in section 3C1.1, requires that the defendant consciously act with the *purpose* of obstructing justice." *Stroud,* 893 F.2d at 507; *accord United States v. Altman,* 901 F.2d 1161, 1164 (2d Cir.1990). Although the district court need not use the word "willful" in order to justify an obstruction enhancement, *Stroud* makes clear that a finding of specific intent is necessary. 893 F.2d at 507–08. Furthermore, Application Note 2 of section 3C1.1 provides that "[i]n applying this provision, suspect testimony and statements should be evaluated in a light most favorable to the defendant." Guidelines § 3C1.1 Application Note 2. While this clearly does not require the sentencing judge to automati-

cally accept the defendant's testimony as true, we believe that Note 2 "instructs the sentencing judge to resolve in favor of the defendant those conflicts about which the judge, after weighing the evidence, has no firm conviction." *United States v. Franco–Torres,* 869 F.2d 797, 801 (5th Cir.1989); *accord United States v. Matos,* 907 F.2d 274, 276 (2d Cir.1990).

In the instant case, although Thomas–Hamilton initially denied committing the allegedly obstructive acts identified in the presentence report, the transcript of the sentencing hearing indicates that she did engage in a somewhat confrontational conversation with her drug treatment counselor. According to Thomas–Hamilton, she became upset when the counselor allegedly withdrew a promise to release her from counseling due to her erratic attendance record. She stated that

> [t]he counselor did tell me that he was going to discharge me from the counseling being that I had all clear urines but when the day came, he told me he wasn't going to discharge me because of my attendance....
>
> I did get upset in there but as far as bodily injury, I never told him I was going to do anything to him.

The government, on the other hand, contended that Thomas–Hamilton responded to the counselor's news "with a threat that one of us is going to be hurt." Apparently persuaded that such a threat constituted obstruction of justice *per se,* Judge McLaughlin imposed the obstruction adjustment notwithstanding his express concession that he was "at a loss to ... figure out ... what [Thomas–Hamilton's] intent was." This methodology cannot stand.

The imposition of a section 3C1.1 enhancement in the absence of a specific finding of intent to obstruct justice simply cannot be reconciled with our holding in *Stroud. See* 893 F.2d at 507–08; *see also Altman,* 901 F.2d at 1164. Moreover, we do not conclude that, when evaluated in a light most favorable to the defendant, the record supports the government's assertion that Thomas–Hamilton possessed the requisite *mens rea* to justify a two level ob-

struction enhancement. *Cf. United States v. Jones,* 900 F.2d 512, 521–22 (2d Cir.1990). Even were we to accept the government's recitation of the events in question, there is simply no indication whatsoever that Thomas–Hamilton's alleged threat was made with the *purpose* of obstructing justice. The alleged conduct, while indeed reprehensible, may simply have been intended to effect a relaxation of the defendant's obligation, pending sentencing, to report to drug treatment counseling. Such conduct, which might have justified a revocation of the defendant's bail or even separate criminal prosecution, cannot, based on the present record, be equated with a "willful[ ] interfere[nce] with the disposition of criminal charges." Accordingly, the sentence must be vacated.

Although we conclude that Thomas–Hamilton's alleged threat of bodily injury cannot support a two level obstruction enhancement in the absence of a finding of specific intent, her alleged failure to identify herself when confronted by a probation officer during the course of the pretrial field investigation may provide an independent basis for assessing the obstruction adjustment. *See* Guidelines § 3C1.1 Application Note 1(e) ("furnishing material falsehoods to a probation officer in the course of a presentence or other investigation for the court" justifies an upward adjustment); *cf. United States v. Patterson,* 890 F.2d 69, 71–72 (8th Cir.1989) (defendant's use of a false name at time of arrest justified obstruction enhancement). We express no opinion on this issue. However, because Judge McLaughlin apparently did not rely on this factor in assessing the obstruction enhancement, we simply note that he is free to consider it on remand.

## CONCLUSION

For the foregoing reasons, we vacate Thomas–Hamilton's sentence and remand the matter to the district court for resentencing.