372 F.3d 75
 UNITED STATES of America, Appellee,
v.
Robert KHIMCHIACHVILI, also known as Prince Robert, also known as Dr. Von Badische; Cesar A. Viana; Christopher Berwick, Defendants,
Brian D. Sherry, also known as Colonel Sherry, also known as Major Sherry, also known as Sir Brian Sherry, also known as Prince Brian, also known as Brian Sherry-Berwick, George R. Englert, also known as Dr. Moncrieffe, also known as Baron Moncrieffe, also known as Prince George; Cesar A. Viana; Christopher Berwick, Defendants-Appellants.
 Docket No. 03-1166(L).
 Docket No. 03-1219(CON).
 Docket No. 03-1237(CON).
 Docket No. 03-1318(C0N).
 United States Court of Appeals, Second Circuit.
 Argued: May 7, 2004.
 Decided: June 9, 2004.
 
 Alexander H. Southwell, Assistant United States Attorney, New York, NY, for Appellee (David N. Kelley, United States Attorney for the Southern District of New York and Adam B. Siegel, of counsel, on the brief).
 Mark P. Goodman, Debevoise & Plimpton, New York, NY, for Defendant-Appellant George Englert.
 Before: OAKES, B.D. PARKER, Circuit Judges, and KORMAN, District Judge.*
 KORMAN, Chief District Judge.
 George Englert appeals from a sentence imposed after his plea of guilty to mortgage fraud, wire fraud, and conspiracy to commit wire fraud. Specifically, he challenges the imposition of a two-level enhancement for obstruction of justice and the consequent denial of a three-level reduction for acceptance of responsibility. We will resolve the appeals of Mr. Englert's co-defendants under separate cover. Here, we consider only whether the sentencing judge was correct in holding that Mr. Englert's swearing to a false financial affidavit in order to obtain court-appointed counsel constituted obstruction of justice within the meaning of USSG § 3C1.1.
 
 
 Background
 
 
 1
 In late 2000, George Englert and his co-defendants came under investigation for an elaborate scheme of mortgage and wire fraud. They were suspected of participating in a fraudulent scheme to convince individuals that they represented a trust that had substantial assets to lend, when in fact, there were no assets. Defendants would convince these individuals — generally entrepreneurs seeking financing — to pay them substantial "performance guarantees" in exchange for loans, knowing that their trust would never provide the sought-after loans.
 
 
 2
 The United States Attorney warned Mr. Englert that he might be a material witness in the investigation and it advised that he obtain counsel. On January 8, 2001, Mr. Englert followed that advice and sought counsel pursuant to the Criminal Justice Act. He submitted a financial affidavit and swore to its accuracy before United States Magistrate Judge Theodore H. Katz. On the basis of that financial affidavit, Magistrate Judge Katz appointed counsel to Mr. Englert, free of charge. Mr. Englert was not indicted until November 6, 2001, when he was charged with one count of conspiracy to commit wire fraud in violation of 18 U.S.C. § 371 and ten counts of wire fraud in violation of 18 U.S.C. § 1343. On March 14, 2002, the United States Attorney filed another indictment, charging Mr. Englert with one count of mortgage fraud in violation of 18 U.S.C. § 1014.
 
 
 3
 One and a half years after the appointment of counsel, on July 22, 2002, Mr. Englert pleaded guilty to charges of mortgage fraud, wire fraud, and conspiracy to commit wire fraud. In connection with his pre-sentence report, Mr. Englert submitted to the Probation Office a Net Worth Statement and a Cash Flow Statement. In total, Mr. Englert listed assets of approximately $817,000 and liabilities of $345,000. His most significant assets were a home worth $500,000 (with an outstanding mortgage of $345,000) and paintings, furniture, and antiques worth $300,000.
 
 
 4
 Mr. Englert was sentenced on May 15, 2003. On the basis of the Net Worth Statement Mr. Englert had filed for his pre-sentence report, the United States Attorney argued that Mr. Englert's earlier financial affidavit, sworn to in connection with the appointment of counsel, was clearly false. Further, he argued that this false affidavit constituted obstruction of justice worthy of a two-level enhancement pursuant to USSG § 3C1.1. Mr. Englert's earlier financial affidavit was not in evidence and could not be located, but the circumstantial evidence was sufficient to support a finding that the affidavit Mr. Englert had filed was false. Accepting the argument of the United States Attorney, the sentencing judge observed:
 
 
 5
 While this enhancement must be evaluated in the light most favorable to the defendant, I find by a preponderance of the evidence that defendant intended to mislead the court by omitting certain information from his financial affidavit. The motivation for these omissions is obvious — he did not want to pay for a lawyer. He knew that if he disclosed all of his assets, he would not qualify for appointed counsel, and that he would have to pay for counsel. This lying is reprehensible [and] constitutes obstruction of justice. A two-level enhancement [is] therefore warranted.
 
 
 6
 On the basis of this obstruction of justice enhancement, the sentencing judge also denied Mr. Englert a three-level reduction for acceptance of responsibility. The probation report had recommended a three-level reduction on this ground, and the United States Attorney had not opposed it. But after the sentencing judge enhanced Mr. Englert's sentence by two-levels for obstruction of justice, the United States Attorney pointed out that "when there is obstruction of justice enhancement, ordinarily acceptance is not warranted." The sentencing judge agreed and stated that a reduction for acceptance of responsibility "wouldn't be warranted where there is a finding of obstruction of justice during the prosecution." Accordingly, Mr. Englert was sentenced to a term of imprisonment of 41 months, five years of supervised release, a $1,200 special assessment, and restitution of $2,957,791.
 
 
 Discussion
 
 
 7
 Mr. Englert makes two principal arguments on appeal. First he claims that the sentencing judge was wrong to enhance his sentence by two levels for obstruction of justice where the financial affidavit claimed to be false was not in evidence and there was no clear showing that Mr. Englert in fact intended to obstruct justice. Second, he claims that the sentencing judge incorrectly denied him a three-level reduction for acceptance of responsibility without considering whether the obstruction of justice at issue was of the sort that suggests a lack of acceptance of responsibility. He argues that any obstruction alleged here should not have precluded a three-level reduction for acceptance of responsibility because the conduct underlying his obstruction of justice enhancement "was not part of an effort to deny guilt or hinder case investigation, but rather resulted from the wholly unrelated process of filling out a financial affidavit at arraignment." By asking us to distinguish among different kinds of allegedly obstructive conduct, Mr. Englert's claim implicitly raises a more basic question. That question, whether swearing to a false financial affidavit in order to obtain court-appointed counsel constitutes obstruction of justice under USSG § 3C1.1, is the only one we address. Because it turns on a legal interpretation of the Sentencing Guidelines, the sentencing judge's decision is reviewed de novo. 18 U.S.C. § 3742(e); United States v. McSherry, 226 F.3d 153, 157 (2d Cir.2000).
 
 
 8
 The Sentencing Guidelines dictate a two-level enhancement under the following circumstances:
 
 
 9
 If (A) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the course of the investigation, prosecution, or sentencing of the instant offense of conviction, and (B) the obstructive conduct related to (i) the defendant's offense of conviction and any relevant conduct; or (ii) a closely related offense, increase the offense level by 2 levels.
 
 
 10
 USSG § 3C1.1. The first clause of this guideline places a temporal requirement on defendant's obstructive conduct. The second clause requires that the obstructive conduct relate in some manner to the underlying offense or related conduct. But we focus first on whether Mr. Englert's swearing to a false affidavit in a proceeding to obtain appointed counsel was in fact a willful attempt to obstruct or impede the administration of justice.
 
 
 11
 To enhance a sentence for obstruction of justice, "the court must find that the defendant's statements unambiguously demonstrate an intent to obstruct." United States v. Kelly, 147 F.3d 172, 178 (2d Cir.1998); USSG § 3C1.1. The Sentencing Commission's understanding of what constitutes obstruction of justice is set forth in examples in Application Notes 4 and 5 to USSG § 3C1.1. See infra pp. 79-81. But it is perhaps better explained by considering what led to two amendments to those examples. In United States v. Stroud, 893 F.2d 504 (2d Cir.1990), we considered whether a defendant's flight from an arresting officer could provide the basis for an obstruction of justice enhancement under § 3C1.1. At the time, the commentary to § 3C1.1 was silent on this score. We observed, however, that "the word `willfully,' as used in section 3C1.1, requires that the defendant consciously act with the purpose of obstructing justice." Id. at 507. We held that flight from an arresting officer could not constitute obstruction of justice in that case because, "the purpose of Stroud's flight was not a deliberate pre or post-arrest attempt to frustrate or impede an ongoing criminal investigation.... Rather, Stroud's flight appears to have been a natural attempt to avoid apprehension." Id. at 508. Less than one year later, the Sentencing Commission implicitly adopted that holding by amending the commentary to § 3C1.1 to state that "avoiding or fleeing from arrest" was not conduct that would warrant an obstruction of justice enhancement. See USSG, App. C., amend. 582.
 
 
 12
 A separate amendment to the application notes of § 3C1.1 was rooted in our decision in United States v. Thomas-Hamilton. 907 F.2d 282 (2d Cir.1990). In Thomas-Hamilton, we considered whether a defendant's threats to a drug treatment counselor pending sentencing warranted an obstruction of justice enhancement. We concluded that they did not for the following reason:
 
 
 13
 Even were we to accept the government's recitations of the events in question, there is simply no indication whatsoever that Thomas-Hamilton's alleged threat was made with the purpose of obstructing justice. The alleged conduct, while indeed reprehensible, may simply have been intended to effect a relaxation of the defendant's obligation, pending sentencing, to report to drug treatment counseling. Such conduct, which might have justified a revocation of the defendant's bail or even separate criminal prosecution, cannot, based on the present record, be equated with a willful interference with the disposition of criminal charges. Accordingly, the sentence must be vacated.
 
 
 14
 Thomas-Hamilton, 907 F.2d at 286 (internal quotation marks omitted).
 
 
 15
 Subsequently, in United States v. Belletiere, 971 F.2d 961 (3d Cir.1992), the Third Circuit was faced with the question of whether a defendant's effort to quit-claim his interest in a residence to his estranged wife could constitute obstruction of justice where the defendant, accused of committing drug offenses, was seeking to "make it more difficult for the Government to gain the property." Id. at 965. The Third Circuit relied on Thomas-Hamilton in deciding that defendant's conduct could not be the basis for an obstruction of justice enhancement because it was not done with the "purpose of obstructing justice" and could not "be equated with a willful interference with the disposition of criminal charges." Id. at 966-67 (citing Thomas-Hamilton, 907 F.2d at 286). The Third Circuit then went on to consider whether an obstruction of justice enhancement was warranted for defendant's misstatement to a parole officer while awaiting sentencing that he had never personally used drugs, "a misrepresentation established when he tested positive for cocaine use during a random drug test." Id. at 967. The commentary to § 3C1.1 stated without qualification that, "providing materially false information to a probation officer in respect to a presentence or other investigation for the court" was an example of obstruction of justice. USSG § 3C1.1, cmt. n. 4(h); USSG, App. C., amend. 347. Nevertheless, the Third Circuit held that defendant's misstatement could not be grounds for an enhancement because "the false statement could not have impeded the government's sentencing investigation in this case." 971 F.2d at 968. "Belletiere's misstatement had nothing to do with the offenses for which he was convicted. Furthermore, the misstatement was not material to the probation officer's investigation in this particular case." Id. Belletiere again cited Thomas-Hamilton in finding that this conduct, which was not intended to interfere with the outcome of the case at issue, was not of the sort the Sentencing Commission intended to warrant an obstruction of justice enhancement.
 
 
 16
 Belletiere and Thomas-Hamilton represented a majority view, but there was authority to the contrary. See United States v. Garcia, 20 F.3d 670 (6th Cir.1994). On November 1, 1998, the Sentencing Commission resolved the confusion by amending § 3C1.1 Note 5(e) to include "lying to a probation or pretrial services officer about defendant's drug use while on pre-trial release" as an example of the type of conduct that does not warrant an obstruction of justice enhancement. USSG § 3C1.1 cmt. n. 5. While this amendment itself may appear minor, the rationale for it is significant. The Sentencing Commission explained its decision as follows:
 
 
 17
 The purpose of this amendment is to establish that lying to a probation officer about drug use while released on bail does not warrant an obstruction of justice adjustment under § 3C1.1. This amendment resolves a circuit conflict on that issue. Compare United States v. Belletiere, 971 F.2d 961 (3d Cir.1992) (lying about drug use is not obstructive conduct that impedes government's investigation of instant offense), and United States v. Thompson, 944 F.2d 1331 (7th Cir.1991) (same), cert denied, 502 U.S. 1097, 112 S.Ct. 1177, 117 L.Ed.2d 422 (1992), with United States v. Garcia, 20 F.3d 670 (6th Cir.1994) (falsely denying drug use, while not outcome-determinative, is relevant), cert denied, 513 U.S. 1159, 115 S.Ct. 1120, 130 L.Ed.2d 1083 (1995). The amendment, which adopts the majority view, excludes from application of § 3C1.1 a defendant's denial of drug use while on pre-trial release, although the amendment provides that such conduct may be relevant in determining the application of other guidelines, such as § 3E1.1 (Acceptance of Responsibility).
 
 
 18
 USSG, App. C., amend. 582.
 
 
 19
 By amending the Application Notes of § 3C1.1 to reflect the holding in Stroud, and later in Belletiere, the Sentencing Commission twice reaffirmed a common sense definition of what constitutes obstruction of justice — conduct that willfully interferes with or attempts to interfere with the disposition of the criminal charges against a defendant. An enhancement for obstruction of justice is therefore only warranted "if the court finds that the defendant willfully and materially impeded the search for justice in the instant offense." United States v. Zagari, 111 F.3d 307, 328 (2d Cir.1997) (emphasis added). Or, as we have written, the "conclusion that `obstruct,' in this context, relates to anything that can make it more difficult to carry out a just result in a criminal case [is] erroneous as a matter of law." Stroud, 893 F.2d at 507 (citation omitted). For a defendant's conduct to qualify as obstruction of justice, it must have the "potential to impede" the investigation, prosecution, or sentencing of the defendant. See United States v. McKay, 183 F.3d 89, 95 (2d Cir.1999). It cannot simply be a misrepresentation.
 
 
 20
 Mr. Englert's swearing to a false financial affidavit in order to obtain appointed counsel does not reveal the required obstructive intent. As the sentencing judge stated, "[t]he motivation for [Mr. Englert's false financial affidavit] is obvious — he did not want to pay for a lawyer." He was not seeking to prevent justice or even delay it. In other circumstances, a court could find that a defendant's false statement on a financial affidavit submitted in an application to obtain appointed counsel was made with the willful intent to obstruct justice. But as the sentencing judge recognized, those circumstances are not presented in this case. Ultimately, by swearing to a false affidavit, only one thing changed: Mr. Englert was represented by assigned counsel under the Criminal Justice Act. Had he not filed a false affidavit, he would nevertheless have been represented by counsel, and there would not have been any effect on the outcome of the case. What happened here may amount to fraud. Indeed, in the words of the district court judge, it was "reprehensible" and could provide the basis for an enhanced sentence. But that alone is not a justification for an obstruction of justice adjustment.
 
 
 21
 The United States Attorney urges a broader reading of the obstruction of justice adjustment. Application Note 4 to USSG § 3C1.1 provides a "non-exhaustive list of examples of the types of conduct to which [the obstruction of justice] adjustment applies," which includes: (f) providing materially false information to a judge or magistrate;
 
 
 22
 (g) providing materially false information to a law enforcement officer that significantly obstructed or impeded the official investigation or prosecution of the instant offense.
 
 
 23
 USSG § 3C1.1, cmt. n. 4. The United States Attorney claims that, because Note 4(f) does not include the limiting language contained in Note 4(g), any time a defendant provides materially false information to a judge or magistrate (except as otherwise noted in the Sentencing Guidelines), that defendant is subject to an enhancement for obstruction of justice. We disagree.
 
 
 24
 We read the limiting language in Note 4(g) to circumscribe the circumstances under which a statement to a law enforcement officer constitutes obstruction of justice to those cases where the statement in fact obstructs justice. See USSG § 3C1.1, cmt. n. 5(b) (making clear that making false statements, not under oath, to law enforcement officers does not qualify as obstruction of justice unless Note 4(g) applies). False statements to a judge or magistrate can provide the basis of an obstruction of justice adjustment if they were intended to obstruct justice, even where there is no such effect. There is no indication, however, that the Sentencing Commission intended to provide that a false statement to a judge or magistrate not made for the purpose of obstructing justice should warrant an enhancement. Again, in similar fashion, Note 4(h) instructs without qualification that "providing materially false information to a probation officer in respect to a presentence or other investigation for the court" can constitute obstruction of justice. USSG § 3C1.1, cmt. n. 4. But as the amendment discussed above and the eventual wording of Note 5(e) made clear, not every material false statement to a probation officer warrants an obstruction of justice enhancement. Rather, the enhancement is only intended for those false statements that have a purpose of obstructing the sentencing investigation regarding the offenses for which he was convicted.
 
 
 25
 The United States Attorney relies on several cases where courts have resolved this question differently. Specifically, the Ninth Circuit and Eleventh Circuit have both found that filing a false affidavit in an effort to obtain free representation by counsel constitutes obstruction of justice under USSG § 3C1.1. See United States v. Hernandez-Ramirez, 254 F.3d 841 (9th Cir.2001); United States v. Hitt, 164 F.3d 1370 (11th Cir.1999); United States v. Ruff, 79 F.3d 123 (11th Cir.1996). We find these cases unpersuasive.
 
 
 26
 In Hernandez-Ramirez, the Ninth Circuit never squarely addressed the issue of whether willfully filing a false financial affidavit in order to obtain court-appointed counsel revealed an intent to obstruct justice. 254 F.3d 841. Instead, it addressed an argument of the defendant based on Amendment 581 to the United States Sentencing Guidelines, which altered the text of § 3C1.1. Specifically, § 3C1.1 had previously read as follows: "If the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense, increase the offense level by two levels." After the 1998 amendment, the guideline took its current form:
 
 
 27
 If (A) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the course of the investigation, prosecution, or sentencing of the instant offense of conviction, and (B) the obstructive conduct related to (i) the defendant's offense of conviction and any relevant conduct; or (ii) a closely related offense, increase the offense level by 2 levels.
 
 
 28
 USSG § 3C1.1. The principal change was the addition of clause (B). The defendant claimed that filing a false financial affidavit in order to obtain court-appointed counsel could not provide the grounds for an obstruction of justice enhancement because it did not relate to his offense of conviction and any relevant conduct, or a closely related offense. Hernandez-Ramirez, 254 F.3d at 844. The Ninth Circuit upheld the adjustment after reasoning that "nothing about the amendment to § 3C1.1 suggests that it was intended to add a requirement that the obstructive conduct relate substantively to the offense of which the defendant was convicted." Id.
 
 
 29
 We do not rely principally on the language of clause (B) of § 3C1.1 for our holding. Instead, we focus on the language of clause (A) that the Ninth Circuit passed over, and particularly the requirement that the defendant "willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice." Nevertheless, by using the words "related to," the language of clause (B) is consistent with our holding and reflects the understanding of the Sentencing Commission with respect to the kind of conduct that qualifies for an obstruction of justice enhancement. Indeed, on the same day that clause (B) was inserted, the Sentencing Commission adopted the Third Circuit's holding in Belletiere, 971 F.2d 961, that only false statements that willfully interfere with or attempt to interfere with the disposition of the underlying criminal charges or some related charges is obstruction of justice. See USSG, App. C., amend. 582.
 
 
 30
 The Eleventh Circuit's consideration of the instant issue has been similarly cursory. In United States v. Ruff, it found that because the defendant made a false statement to a magistrate judge, "the sole question before us is whether his statement was material." 79 F.3d at 126. It continued: "Ruff's statement's were material because they led to the appointment of counsel, which was the issue under consideration at the hearing... Accordingly, the district court did not err in enhancing Ruff's sentence in accordance with U.S.S.G. § 3C1.1." Id.; see also United States v. Hitt, 164 F.3d 1370 (simply citing Ruff for proposition that false statement to a magistrate judge in application for appointed counsel is obstruction of justice); Hernandez-Ramirez, 254 F.3d at 844 (holding that swearing to a false affidavit in an effort to obtain court-appointed counsel is "material"). We believe the Eleventh Circuit was wrong to read define "material" without reference to the requirement that the conduct be designed to obstruct or impede the administration of justice. It is not enough to simply say that the false statements were material because they had an effect on some discrete action taken by a magistrate judge; that effect or its intention must be to somehow "impede[] the search for justice." Zagari, 111 F.3d at 328. Simply put, Mr. Englert's swearing to a false financial affidavit in an effort to obtain court-appointed counsel could not affect the outcome of the case, and was therefore immaterial in the context of obstructing justice. As the sentencing judge stated, "[t]he motivation for [Mr. Englert's false financial affidavit] is obvious — he did not want to pay for a lawyer."
 
 
 31
 While we hold that Mr. Englert's false affidavit could not provide the basis for a two-level enhancement under USSG § 3C1.1, we do not mean to suggest that it could not provide the grounds for an upward departure or a different adjustment within the Sentencing Guidelines. We hold only that, because Mr. Englert's swearing to a false financial affidavit in order to obtain court-appointed counsel did not constitute obstruction of justice, the enhancement of his sentence under USSG § 3C1.1 based on that affidavit was error.
 
 
 32
 The judgment of conviction is vacated and the case is remanded to the district court for resentencing.
 
 
 
 Notes:
 
 
 *
 The Honorable Edward R. Korman, Chief Judge of the United States District Court for the Eastern District of New York, sitting by designation